[No. 12370. Department Two. May 22, 1915.]

JOHN A. MAGNUSSON, *Respondent*, v. PETER R. TANZY,

*Appellant*.[1]

PATENTS — ASSIGNMENT — RESCISSION—FALSE REPRESENTATIONS—
KNOWLEDGE. An assignment of a patent will not be cancelled for
false representations by the assignee as to his financial resources for
the manufacture of the machines, which was the consideration for
the assignment, where his inability to finance the enterprise alone
was known to plaintiff early in their negotiations and before the
assignment was made.

PATENTS—ASSIGNMENT—CONSIDERATION—EVIDENCE. A finding of
failure of consideration for assignments of a half interest in two
patents is supported by evidence to the effect that the assignment
was made on defendant's agreement to manufacture and market the
machines at the joint expense of the plaintiff and defendant, and
divide the profits, that both contributed in equal amounts to the
manufacture of eight machines, and that the defendant thereafter
refused to advance any money for the manufacture of machines
necessary to protect one of the patents.

Appeal from a judgment of the superior court for Pierce
county, Easterday, J., entered January 31, 1914, in favor
of the plaintiff, in an action for rescission, tried to the court.
Affirmed.

*L. C. Stevenson*, for appellant.

*H. R. Lea* and *H. G. Fitch*, for respondent.

ELLIS, J.—This action was brought to rescind a verbal
contract and to cancel and set aside written assignments of
an undivided one-half interest in two patents, one for the
United States, the other for Canada, of a certain mechanical
device invented by the plaintiff.

The complaint, though somewhat inartificially drawn, suf-
ficiently sets up two grounds for the rescission of the oral
contract and the cancellation of the assignments. It is first
claimed that prior to the time of the application for these

[1]Reported in 148 Pac. 883.

patents, an agreement was entered into between the plaintiff
and defendant whereby the defendant was to pay the expense
of obtaining the patents, finance the manufacture and sale
of the contrivance and pay to respondent one-half of the
profits realized in the enterprise, in consideration of the plain-
tiff's assignment of a one-half interest in the patents to the
defendant. It is alleged that, at the time of these negotia-
tions, the defendant represented that he could devote at least
$5,000 to financing the enterprise; that the plaintiff made
the assignments in reliance upon this representation and as
security to the defendant for the carrying out of the con-
tract; that these representations were false and fraudulent,
and for that reason the plaintiff is entitled to a rescission of
the contract and a cancellation of the assignments. As a sec-
ond ground for the cancellation, it is alleged that the defend-
ant has refused to fulfill the terms of his agreement, and by
reason thereof there is a total failure of consideration for the
assignments.

The defendant answers that the only agreement entered
into was that he should pay the expense of procuring the
patents in consideration of an assignment of an undivided
one-half interest therein, and denies that he entered into any
agreement to finance the manufacture and sale of the ma-
chine. The reply put in issue the affirmative matter in the
answer.

The assignments were made under the following circum-
stances: The plaintiff is a mechanic who has been employed
in the shops of the Northern Pacific Railway Company, at
South Tacoma, for the last eleven years in the capacity of
foreman. During that period, he invented and brought to a
stage of more or less complete efficiency a device for extract-
ing bolts from the iron and steel framework of cars and loco-
motives. He had never applied for a patent on this device,
but had for some years employed it for his own use and that
of the men under his direction as foreman. In March, 1911,
the defendant began work in the Northern Pacific shops. The

plaintiff was his foreman. In April, 1911, having become familiar with the use of the bolt extractor, he inquired of the plaintiff why he had not secured a patent on it, and the plaintiff replied that he had not sufficient funds. At this point the evidence becomes sharply conflicting. The plaintiff testified to the effect that the defendant expressed a desire to secure an interest in the device, when the plaintiff said: "If you wish to become interested in a patent on it I can arrange to have the designs finished so that it will be patentable." The defendant said: "Concerning the money, that is an easy part of it. I can raise $5,000 any time it is needed. My father-in-law is well off and I get all the money I want to from him." The plaintiff then replied: "All right, if you feel that way I will tell you what I will do. You get the patents and make the machine and sell it and give me one-half of the profits." The defendant replied: "All right, I will go you." Two disinterested witnesses, who claim to have heard this conversation, corroborate the plaintiff, except that one of them did not remember that anything was said as to the $5,000. In response to a question by the court as to what was the consideration for the assignments, the plaintiff answered:

"Why, he promised to make the machine and sell it and give me half of the profits, of the income for the machine,— that is what I got out of it, that is what he got the assignment for. He was to patent the machine and make it and sell it and give me half of the profits."

The defendant testified to the effect that in April, 1911, he talked with the plaintiff about the invention, asked if it was his and why he did not get it patented; that the plaintiff said he did not think it was worth it; that the defendant said that he thought it was a handy contrivance and asked what the plaintiff would take for his "signature," by which he explained he meant an assignment of the right to secure a patent on the invention; that the plaintiff answered he would take a one-half interest, to which the defendant said, "All

right;" that a few days later he asked the plaintiff to sign the application for a patent, and the plaintiff inquired, "Are you going to take out that patent?" That the defendant answered in the affirmative, and the plaintiff then said he would make some improvements so that they could all be patented together, and would make drawings of it so that the defendant could take them to a certain patent attorney and apply for a patent.

It appears that the matter stood on these somewhat indefinite negotiations until some time in May, when the parties together visited a patent attorney in Tacoma to ascertain whether the device was patentable. The defendant paid the attorney $5 for making a search, and the parties were advised that it was, whereupon the attorney was directed to apply for a patent. The defendant further testified that, on the way home from this visit, the subject of manufacturing the article was first broached; that the plaintiff then said, "We will make them and sell them, each paying one-half;" that the defendant answered, "That is all right," and that this was all that was ever said regarding the manufacture of the machine. The plaintiff, after this first visit to the patent attorney, suggested that the machine would be much more effective with jaws so constructed as to grasp the projecting end of the bolt intended to be removed and hold it firmly while the power of the jack was being applied to force the bolt from the iron frame. Upon this suggestion it was agreed to delay application for the patent until the plaintiff had finally perfected the jaws, which, it seems, constitute one of the chief features of the device as finally patented. On the first visit to the patent attorney, the parties were advised that the plaintiff could not assign to the defendant the full right to secure a patent, since at least one of the applicants must be the inventor himself. The assignment of an undivided one-half interest in the right to secure a patent for the United States was made by the plaintiff to the defendant on Janu-

ary 27, 1912. The application for a patent from the United States had been made in the names of both parties in September, 1911, and the patent was finally issued in March, 1912. About this time the parties determined to secure a patent also in the Dominion of Canada. The assignment of the right to a one-half interest as to the Canadian patent was made on March 30, 1912, and the Canadian patent was issued to the parties jointly in May, 1912. The defendant paid the expense of securing both patents, aggregating $132. In the meantime the plaintiff had manufactured eight of the machines at his own expense. Two of the machines were finally sold for $250 each, and after the sale the defendant paid to the plaintiff one-half the cost of the manufacture of the several machines.

It is undisputed that both parties knew that, to protect the Canadian patent right, it would be necessary to manufacture machines in Canada within two years from the issuance of patent. In view of this fact the plaintiff insisted that the defendant finance the manufacture of the machines in Canada. It seems to be undisputed, also, that this would necessitate an initial expenditure of about $500. At this time the parties had on deposit to their joint account as the net proceeds of the sale of the two machines something near $200. The defendant definitely refused to advance any money for the manufacture of the machines in Canada, and wrote to the plaintiff that he believed the Canadian venture was a loss; that he would do nothing further in the matter, and would not invest another dollar in the bolt extractor other than to permit the use of the money on deposit to the joint credit of the parties. The plaintiff thereupon brought this suit.

The case was tried to the court without a jury. The court made no findings of fact or conclusions of law, but entered a decree cancelling both assignments, directing that the plaintiff repay to defendant the $132 paid by him for securing the patents, with interest thereon, and directing a division of

the money in the bank after satisfying all debts which had been incurred in the enterprise. The defendant appealed.

The appellant first contends that, under the evidence, the sole consideration for the assignment of the one-half interest in the right to secure patents was the appellant's agreement to pay the cost of securing them. As we view the evidence it does not support this contention. The appellant himself admitted that the agreement to manufacture the machines, each paying one-half of the cost and dividing the profits equally, was made in May, 1911, several months before either patent was applied for. We think the entire evidence shows that the assignments were made with the understanding that the parties would engage in the manufacture of the machines, and that this understanding was a part of the consideration for the assignments.

It is next claimed that there was not sufficient evidence of fraudulent representations as to his financial condition and resources on the appellant's part to entitle the respondent to a rescission, and that in any event the respondent learned that the appellant was without financial resources long prior to this action and was therefore guilty of such laches as to bar rescission on the ground of fraud. The evidence preponderates in favor of the respondent's claim that the representations were made. If they were made, it is admitted that they were false. It is clear, however, that the respondent was fully aware of the appellant's inability to finance the enterprise alone early in the negotiations and long before he made the assignments. Under these circumstances, he is not entitled to a rescission on the ground of fraudulent representations.

The ultimate question for decision is thus reduced to an inquiry as to what was the real consideration for the assignment, and as to whether there was such failure of consideration as to entitle the respondent to a rescission. As we have shown in our statement of the case, there was a sharp con-

flict as to what the contract was. In fact, the evidence of both parties is so vague and indefinite as to make it doubtful whether, but for their subsequent acts in carrying out the agreement, there was established any enforcible contract. The evidence, such as it is, preponderates in favor of the respondent's claim that the appellant agreed to finance the manufacture and sale of the machines and divide the profits with the respondent in consideration of a one-half interest in the patents. But the acts of the parties tend to support the appellant's claim that the agreement was that the parties should manufacture and market the machines at their joint expense and divide the profits. Both contributed in equal amounts to the manufacture of the eight machines which were made, and the respondent seems finally to have demanded no more than that the appellant proceed on that basis and furnish his part of the money for manufacturing the machines in Canada in order to preserve the Canadian patent. In view of the contract, however, it is clear that the appellant has failed to meet the agreement. If the agreement was that he should finance the manufacture and sale of the machines, he has wholly failed to meet it and has expressly repudiated it. If the agreement was that he should pay one-half of the expense of such manufacture and sale, he has failed to meet his duty in that regard, since he has positively declined to advance any money for the manufacture in Canada, thus jeopardizing the Canadian patent. Whichever view, therefore, is taken as to the agreement of the parties, it is evident that appellant has failed to carry out his obligations and that the consideration for the assignments has failed.

In view of the indefinite nature of the contract, which is so vague in its terms as to render it unenforcible, and in view of the confessed financial irresponsibility of the appellant, we are satisfied that the trial court's decision placing the parties in *statu quo* by cancelling the assignments and decreeing the payment to the appellant of all sums advanced by him for

securing the patents, accords as nearly with exact justice as any decision which could have been reached on the indefinite and conflicting evidence. We have examined the record with the utmost care. We are satisfied that the judgment should be affirmed. It is so ordered.

Morris, C. J., Fullerton, Main, and Crow, JJ., concur.